ing was the ordinary one for the revocation of a probate under section 2647. In addition to the challenging of the validity of the will, it was there claimed that the petitioner, who was the only daughter of the testator, although served with a citation, had been unjustly taken into custody under the claim that she was insane, and had not been permitted to appear on the hearing, while in fact she was of sound mind. The court held that she had waived this claim, since she had proceeded upon the hearing before the surrogate upon the merits, and that in any event she had accomplished, by having a hearing upon the merits, what she was entitled to, if she had established the claim that she had been unjustly prevented from appearing on the original hearing. The court, in its opinion, referring to her claim, said that her allegations, if substantiated by the proofs, would be ample warrant for the surrogate whose process had been interfered with to open up the case again for the reception of the proofs offered by the petitioner; that clearly under his incidental powers at any time on such a showing he could do that; that, while under such circumstances the surrogate would nevertheless obtain jurisdiction to make the decree, yet for the failure to be heard therein the surrogate is empowered to grant relief by a rehearing to the party deprived thereof.

I deem it unnecessary to prolong the discussion of these questions. I think upon reason and authority the surrogate had power to open the decree admitting to probate the codicil and allow the petitioner to contest the validity of it, and, if the petitioner was successful, to admit to probate the original will. Whether she would ultimately succeed is not now before us for a decision.

I think a case is made sufficient to warrant a rehearing before the surrogate, and that the order appealed from should be reversed, and the motion granted.

---

### ROSSENBACH v. SUPREME COURT, I. O. F.

(Supreme Court, Appellate Division, Fourth Department. December 28, 1906.)

NEW TRIAL—VERDICT AGAINST EVIDENCE. .

> Where, in an action on a life insurance certificate, two questions were properly submitted to the jury, whether the questions bearing on the habits of insured were put to him and answered as shown by the application, and, if so, whether the answers were false and fraudulent, and there was merely a general verdict for plaintiff, so that for aught that appears the jury may have found that the answers were correctly transcribed, but were not false in fact, and the latter finding would be against the weight of evidence, a new trial will be granted.

Appeal from Trial Term, Monroe County.

Action by Theresa Rossenbach against the Supreme Court of the Independent Order of Foresters. From a judgment on a verdict for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

O. P. Stockwell, for appellant.

Charles Van Voorhis and George V. Fleckenstein, for respondent.

SPRING, J.   On the 18th of December, 1900, the defendant issued its benefit certificate, whereby it agreed to pay to the plaintiff the sum of $2,000, upon the death of William Marzhauser while a member of its order in good standing.   Marzhauser died October 27, 1901, while a member of the order, and the action is to collect the sum due by the terms of the agreement.   The case was in this court upon a previous appeal after a verdict in favor of the plaintiff, and the judgment and order denying a new trial were unanimously affirmed (98 App. Div. 634, 90 N. Y. Supp. 1112).   A new trial was ordered in the Court of Appeals for errors in the exclusion of evidence (184 N. Y. 92, 76 N. E. 1085).   After a more careful consideration of the case, we are satisfied that we erred in not ordering a new trial upon the former appeal on the ground that the verdict was contrary to the evidence.   We propose now, in so far as we are able, to right the wrong then committed.

The medical examiner propounded to Marzhauser upon his application for insurance a number of questions to test his record for sobriety. The questions and answers were as follows:

"Do you drink wine? No. Do you drink spirits? No. Do you drink malt liquors? No. Have you been intoxicated within the past five years? No. When was the last occasion? Never. What has been your habit in this respect during life? Temperate."

The application containing these answers was signed by Marzhauser, and the defendant claims that they were false and fraudulently made by him.   The medical examiner testified that these questions were put to Marzhauser; that he answered them as they appear in the application, and were read over to him.

There have been three trials of this action and two verdicts.   Upon the former trials William Rossenbach, the husband of the plaintiff, was a witness in her behalf.   He died prior to the last trial, and his testimony was read from the stenographer's minutes of the second trial.   He testified that he was present at the medical examination of Marzhauser, and that the applicant was not asked the questions which have been quoted, or inquired of concerning his habits, nor did he make the answers which appear in the application, nor were they read over to him.   The medical examiner was the agent of the defendant in taking down these answers, and, if he incorrectly recorded them, the plaintiff may show that fact to prevent the forfeiture of the benefit certificate.   Sternaman v. Metropolitan Ins. Co., 170 N. Y. 13, 62 N. E. 763, 57 L. R. A. 318, 88 Am. St. Rep. 625.   The dispute over this proposition was a question of fact.

There are one or two pregnant facts relative to Marzhauser's indulgence in liquor which may be important to mention.   He applied for insurance with the defendant October 10, 1900, and was initiated November 22d following; and the certificate bears date December 18th. On October 23, 1899, less than a year before he applied for insurance of the defendant, he was convicted in the Court of Special Sessions in Rochester of intoxication in a public place, sentenced to 30 days in the Monroe county penitentiary in default of paying the fine imposed, and served out the sentence.   In the same court he was convicted of a like offense December 21, 1897.   These two convictions are cogent in contradiction of the answers given by Marzhauser and which have al-

ready been quoted. Many witnesses testified as to his very frequent intoxication for several years immediately preceding the issuance of the benefit certificate sued upon. There are other witnesses, relatives, or acquaintances, who testified to his almost uniform temperance. It is unnecessary to analyze or comment upon these contradictions. A perusal of the record leaves the impression irresistibly that he was addicted to the drink habit and was very often intoxicated. He was committed to the state hospital for the insane at Rochester about the time the certificate was issued, and continued there until his death in October following.

There was a general verdict. Two questions were properly submitted to the jury—one whether the questions bearing upon his habits were put to the applicant and answered by him; and the other, whether, if so, they were falsely and fraudulently answered. For aught that we may know, the jury may have found that the answers were correctly transcribed, but were not false in fact. In that view of the case we think the jury disregarded the weight of the evidence, and a new trial should be granted.

Judgment and order reversed, and a new trial granted upon the facts, with costs to the appellant to abide the event. All concur.